McBATH v. AMERICAN REPUBLIC INSURANCE COMPANY.

4-7560                                              187 S. W. 2d 954

Opinion delivered May 21, 1945.

*Oliver Moore,* for appellant.

*Bob Bailey, Jr.,* and *Bob Bailey, Sr.,* for appellee.

GRIFFIN SMITH, Chief Justice. A jury was waived and the court gave judgment for the defendant insurance company on the main issue, but held that the plaintiff was entitled to the return of $75 paid as premiums on a health and accident policy issued January 1, 1942. In appealing, the insured contends there was no substantial evidence upon which the court could find that the contract was voidable because procured through false representations in relation to health. While other matters are discussed, fraudulent procurement is the principal issue.

The prayer was for $600 as cumulative amounts payable on the basis of $50 per month for disability caused by sickness.

The application, made on a form provided by the Company, contains questions and answers regarding Appellant McBath's health. By express terms answers were made warranties. Effect of the answers, written by the Company's soliciting agent, was a proposal for insurance based upon the applicant's "sound" health. He had not been "sick or hurt" during the preceding three-year period. A special policy provision is that certain diseases, including hypertension, are not covered unless the illness had its origin more than six months after the contract, or more than six months from the date of any reinstatement.

McBath admitted he was delinquent for "a month or two." Reinstatement followed an application signed April 28, 1942. A warranty was that ". . . I am now in good health and I am not suffering from any injury or ailment." At that time McBath had in his possession the policy issued on his application of January 1. The

policy proper, as distinguished from the second application, contained the provision excluding illness caused from hypertension originating less than six months after the contract, but the first application carried the warranty that McBath had not been sick or injured within three years. The January application is not abstracted; neither is it included in the record.

Appellant's contention is that the Company's agent asked but two questions:—"What is your name, and who shall be listed as beneficiary?" Other answers, says McBath, were gratuitously filled in by the agent; hence, says appellant, no warranties or representations were made.

Although disclaiming responsibility for the false answers, appellant admitted he read the policy when it was received in February, 1942. He then added: "I read all of the application that I could, but didn't discover any errors."

Appellant insists he was not ill until December, 1942; but on cross examination his counsel stated: ". . . for the purpose of the record we admit that McBath had been sick and had been in the hospital. There is no dispute about that."

As a witness in his own behalf McBath admitted he was sent to a hospital in December, 1941. He was attended by a physician ". . . who [hadn't given] me a prescription before this." The doctor informed McBath he was run down:—"something about my blood; either my red or my white corpuscles needed building up. I was in a weakened condition." When asked on cross examination if he was in good health when the application was made, McBath replied, "I don't know. I presume that a man of my age—he is presumed to have some little minor troubles. There are very few that don't."

There was this question: "Would you have answered 'yes' if the Company's agent had asked if you were in good health?" The answer was, "I presume I would, because I was feeling pretty good. [As a pharmacist] I was able to do my work and wait on the customers."

The Company's agent testified he wrote the answers as appellant gave them.

The court found as a matter of fact that McBath became ill in 1940 and that there had been recurrences at various times. When hospitalized in March, 1940, the patient was suffering from hypertension. He was treated by Dr. R. I. Millard December 1, 1942, who said he ". . . gave a history of having had hypertension for some time."

Appellant contends this Court has judicial knowledge that high blood pressure, or "hypertension," is not a disease, nor even a "grave ailment," as is stated in the finding of facts.

Result of the Court's finding is a determination that McBath was subject to hypertension, and that it was of long standing.

There is no error in the record. In each of his declarations of disability—made to procure benefits—McBath represented that he had never been affected by illness, disease, deformity, infirmity, or weakness other than "acute multiple arthritis." He was claiming compensation for the latter. While this particular representation was not a part of the contract, it tends to disclose appellant's attitude in relation to the Company— a purpose to disclaim knowledge of any illness, and to arbitrarily treat his admitted "indisposition" as insignificant. This is at variance with a stipulation made as an incident to Dr. Millard's testimony, wherein it was agreed that McBath "had" high blood pressure when hospitalized in 1940. Another example of appellant's lack of frankness is found in his so-called "proof of loss." When asked whether he had received "any other" medical treatment during the preceding five years, he answered "No."

Seemingly the tendency of medical authorities is to treat hypertension (commonly called high blood pressure) as merely symptomatic, supporting the conclusion that it is indicative of disease, or secondary either to a definite diagnosis, or an undetermined principal malady.

But whatever the weight of scientific opinion may be, appellant's policy mentions hypertension and treats it as a status in respect of which, conditionally, there is no compensation. It follows that McBath concealed from the Company facts material to his insurability. The agent's testimony that the answers he wrote were given by McBath, and McBath's assertion that but two questions were asked, raised a factual issue. Each was an interested witness, one representing the Company, and in a sense defending against the imputation of deceit; the other seeking to recover for his own benefit.

In these circumstances, and with the record disclosing conflicting evidence from which the court had to ascertain the facts, we cannot say that the evidence was not substantial.

Affirmed.